UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23831-CIV-COOKE/TURNOFF

ROBERT ROBINS,

      Plaintiff,

v.

THE TOWERS OF QUAYSIDE NO.1
CONDOMINIUM ASSOCIATION, INC.,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before me upon Defendant's, The Towers of Quayside No. 1 Condominium Association, Inc., Motion for Final Summary Judgment ("Motion for Summary Judgment") (ECF No. 36).  Plaintiff, Robert Robins, filed his Response in Opposition to Defendant's Motion for Final Summary Judgment (ECF No. 46), to which The Towers of Quayside No. 1 Condominium Association, Inc. submitted its Reply to Plaintiff's Opposition to Motion for Summary Judgment (ECF No. 49).  Thus, the Motion for Summary Judgment has been fully briefed and is ripe for adjudication.  I have reviewed the Motion for Summary Judgment, the Response and Reply thereto, Defendant's Statement of Material Facts, Plaintiff's Counter-Statement of Material Facts in Opposition to Defendant's Motion for Final Summary Judgment, the record, the relevant legal authorities, and am otherwise duly advised in the premises.

For the reasons provided herein, The Towers of Quayside No. 1 Condominium Association, Inc.'s Motion for Summary Judgment is granted.

## BACKGROUND

The following facts, taken from both Defendant's Statement of Material Facts and Plaintiff's Counter-Statement of Material Facts in Opposition to Defendant's Motion for Final Summary Judgment ("Plaintiff's Counter-Statement of Facts"), but viewed in the light most favorable to the Plaintiff, are uncontested and supported by evidence in the record unless otherwise noted. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

Plaintiff, Robert Robins ("Plaintiff" or "Mr. Robins"), brings this two-count civil action against Defendant, The Towers of Quayside No. 1 Condominium Association, Inc. ("Defendant" or "Association"), alleging violations of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.* arising from the Association's request that Mr. Robins remove his service animal from the premises. In Count I, Plaintiff alleges that the Association "discriminated against Mr. Robins, in violation of 42 U.S.C. § 3604(f), on the basis of his disability" by failing to make an accommodation for Mr. Robins' service animal. (Compl. ¶ 20, ECF No. 1). Count II of Plaintiff's Complaint asserts that the Association "violated 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with Mr. Robins in the exercise and enjoyment of his fair housing rights…." (Compl. ¶ 23).

The Association maintains a pet policy that permits a unit owner to have one cat or dog that weighs 20 pounds or less, is kept in accordance with the Association's Rules and Regulations, and does not create or constitute a nuisance – all nuisances being banned pursuant to a separate provision of the Association's policy. (Def.'s Stmnt. Facts ¶ 2). On or about January 27, 2009, Mr. Robins, a unit owner in the Association for 31 years, found a dog at a Chinese restaurant during the Chinese New Year, named her "China," and brought her to his unit the following day. (*Id.* ¶ 5).

2

The Association learned of China on or about February 2, 2009, and pursuant to its policy, requested that Mr. Robins register China. (*Id.* ¶ 6). At that time, China weighed 38 pounds, and currently weighs at least 60 pounds. Despite being well in excess of the weight limit, Mr. Robins did not request an accommodation for China prior to bringing her into his unit or when the Association asked him to register China. (*Id*). Consequently, on or about February 23, 2009, the Association informed Mr. Robins that China exceeded the allowable weight limit of 20 pounds. (*Id.* ¶ 7). In response, and for the first time, Mr. Robins stated that he required China for medical reasons. (*Id.*). Following a request for medical documentation, on or about March 20, 2009, Plaintiff provided documentation from his treating physician that he suffered from depression, and therefore, the physician recommended that Mr. Robins obtain a dog that would "bolster his self-esteem, create an interactive social environment and would also assist him with major life activities such as resting and caring for himself." (*Id.*). Plaintiff later submitted a Reasonable Accommodation Request Verification seeking permission to keep China as an emotional support animal, which was granted by the Association.[1] (Def.'s Stmnt. Facts ¶ 8).

Prompted by violent incidents involving China and other unit owners and their pets, which included biting and attacking the pets, leaving them bleeding and suffering physical harm (*see* Lehrman Dep. 5:15-8:17, Aug. 20, 2012; Yeshua Dep. 6:19- 8:12, Aug. 20, 2012), the Association sent Mr. Robins correspondence regarding the numerous complaints it had received

---

[1] Plaintiff's dispute of this fact is inapposite of the record. (Pl.'s Stmnt. Facts ¶ 8). Plaintiff relies upon the Association's June 13, 2011 correspondence asking him to remove China as support that the accommodation was denied. However, this correspondence seeking China's removal was sent over two years after Plaintiff's initial request for an accommodation, and subsequent to several complaints about China by other residents and additional correspondence to Plaintiff regarding methods in which to maintain China in a safe, nuisance-free manner. *See* Def.'s Stmnt. Facts ¶¶ 10-16. Further, Plaintiff admitted that China remained on the property following his request and the Association did not seek her removal at that time. Pl's Am. Resp. Def.'s First Request for Admissions ¶ 9.

3

about China's behavior and the need to correct what it deemed a nuisance.[2] (Def.'s Stmnt. Facts ¶ 10).  In response, Plaintiff's attorney advised that Plaintiff would keep China on a leash of no less than six feet in length and on the leash while in the dog park.  (*Id.* ¶ 11).  Nevertheless, the Association continued to receive complaints regarding China's aggressive behavior, the truth of which Plaintiff adamantly disputes. (*Id.* ¶ 12; Pl.'s Stmnt. Facts ¶ 12).   These complaints compelled the Association to request additional documentation regarding completion of behavioral and training courses for China.  (Def.'s Stmnt. Facts ¶ 13).

Subsequent to another incident involving China and another unit owner's dog on June 2, 2011, Miami-Dade County Animal Services Department conducted a dangerous dog investigation and concluded that sufficient cause existed to designate China as dangerous. (Def.'s Stmnt. Facts ¶¶ 14-15).  Plaintiff disputes factual predicate of the June 2, 2011 incident, and has appealed China's designation as a dangerous dog to the Third District Court of Appeals.  (Pl.'s Stmnt. Facts ¶¶ 14-15, 17; Def.'s Stmnt. Facts ¶ 17).   As a result of this designation, the Association made its final demand that China be removed from the premises.  (Def.'s Stmnt. Facts ¶ 16).  However, prior communication from the Association to Mr. Robins has urged that he obtain another breed of dog and/or suggested that his failure to comply with the Association's requests would result in the Association having to ask that China be removed from the premises. Pl.'s Stmnt. Facts ¶ 16).

Since Plaintiff obtained China and the Association was informed of his disability, Plaintiff asserts that the Association's directors and staff "fostered an environment of hostility, humiliation, and discrimination" toward him.  (Pl.'s Add'l Stmnt. Facts ¶¶ 1, 15).  For example,

---

[2] Plaintiff's objection to the March 13, 2010 correspondence from the Association as hearsay is noted.  I am considering the letter not for the truth of the matter asserted therein, but for the totality of the narrative and the proposition that Plaintiff received notice that his neighbors made complaints – true or false – inasmuch as Plaintiff admits this.  *See* Pl.'s Stmnt. Facts ¶ 10.

4

Henry Cimetta, director and President of the Association, called Mr. Robins a "f**ing idiot" and "idiot" during board meetings. (*Id.*). This disgraceful name-calling was not related to his disability or to China, but was regarding a disagreement regarding repair and replacement of a burglar alarm. (Epstein Dep. 34:25-37:8). Mr. Cimetta has also been known to be rude to other residents and board members, and is regarded as having a "short fuse." (*Id.* 37:9-38:3). Additionally, Linda Johnston, a board member has stated to Ms. Robins "that f**king dog is outta here." (Pl.'s Add'l Stmnt. Facts ¶ 2). Plaintiff further asserts that Association directors and their associates have harassed him in the following ways: filed false reports to the security officer of purported incidents involving China; demanded that China be taken to an Association approved veterinarian to be DNA tested to ensure that China was not a pit bull; encouraged unit owners to file reports of purported incidents involving China; without having conducting an investigation into the truth and veracity of the reports, have sent letters discriminating against Plaintiff based upon fabricated or grossly exaggerated accounts of aggressive interactions with China; and have otherwise tolerated similar behavior of other unit owners' pets, but have deemed China's behavior a nuisance violation. (*Id.* ¶¶ 2-5, 7-14).

## LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston Cnty. Comm'n*, 414 F. App'x 264, 266 (11th Cir. 2011).

**DISCUSSION**

**A.  42 U.S.C. § 3604(f) Claim**

The Federal Fair Housing Act ("FHA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling because of that individual's

6

handicap. 42 U.S.C. § 3604(f)(2). An individual is handicapped, according to the FHA, if the person has (1) a physical or mental impairment that substantially limits one or more of such person's major life activities, (2) a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 6302(h)(1)-(3). "Major life activity" can include "the operation of a major bodily function" and/or "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working."[3] 29 C.F.R. § 1630.2(i) (as amended by 76 F.R. 16978–01).

The FHA establishes that discrimination includes refusing to make reasonable accommodation in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(2). Thus, to state a claim under 42 U.S.C. § 3604(f)(3)(B) for failure to make a reasonable accommodation, a plaintiff must demonstrate that: "(1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Falin v. Condo. Ass'n of La Mer*, No. 11-61903-CIV, 2012 WL 1910021 at *3 (S.D. Fla. May 28, 2012).

Plaintiff fails to establish the first element of a prima facie case of discrimination, namely, that he is disabled or handicapped within the meaning of the FHA. The record is devoid of any evidence that demonstrates that Plaintiff suffers from a physical or mental impairment that substantially limits one or more of his major life activities. As this is an element of the claim

---

[3] The definition of "major life activities" is borrowed from the Americans with Disability Act ("ADA") because the FHA does not define "major life activities." *See McKay v. South Seas East Condo. Apartments of Marco Island, Inc.*, No. 2:12-cv-68-FtM-29SPC, 2012 WL 2872856 at *3 n.6 (M.D. Fla. July 12, 2012) (citing *McManus v. Cherry*, 1:08–cv–0010, 2010 WL 5638108 at *4 (N.D. Fla. Nov.19, 2010)).

Plaintiff brings, it is his burden to make this showing. In fact, Plaintiff hindered the efforts of Defendant to inquire about Plaintiff's disabled state. *See, e.g., Pl.'s Mot. Protective Order & Quash or Modify Subpoena*, ECF No. 14; *Pl.'s Mot Reconsideration &/or Clarification*, ECF No. 18; *Def.'s Mot. Compel Better Answers to Discovery*, ECF No. 19; *Def.'s Mot. Order to Show Cause against Dr. Steven Jay Strumwasser Pursuant to Fed. R. Civ. P. 45(e)*, ECF No. 29.

A defendant "cannot be liable for refusing to grant a reasonable and necessary accommodation if [the defendant] never knew the accommodation was in fact necessary." *McKay v. South Seas East Condo. Apartments of Marco Island, Inc.*, No. 2:12-cv-68-FtM-29SPC, 2012 WL 2872856 at *4 (M.D. Fla. July 12, 2012) (citing *U.S. v. Hialeah Hous. Auth.*, 418 F. App'x 872 (11th Cir. 2011)). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about the possible need for an accommodation." *McKay v. South Seas East Condo. Apartments of Marco Island, Inc.*, No. 2:12-cv-68-FtM-29SPC, 2012 WL 2872856 at *4 (M.D. Fla. July 12, 2012) (citing *U.S. v. Hialeah Hous. Auth.*, 418 Fed. App'x. 872, 876 (11th Cir. 2011) (internal quotations omitted)).

However, "the duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested accommodation...." *McKay v. South Seas East Condo. Apartments of Marco Island, Inc.*, No. 2:12-cv-68-FtM-29SPC, 2012 WL 2872856 at *4 (M.D. Fla. July 12, 2012) (citing *U.S. v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (internal quotations omitted)). "Demonstrating that a proposed accommodation is necessary 'requires at a minimum the showing that the desired

accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" *Falin v. Condo. Ass'n of La Mer*, No. 11-61903-CIV, 2012 WL 1910021 at *3 (S.D. Fla. May 28, 2012) (quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995)).  There is nothing in the record that establishes that China ameliorated any of Plaintiff's asserted disabilities.  Plaintiff's failure to submit additional documentation regarding his disability and to allow Defendant to inquire directly of Plaintiff's physician, did not permit Defendant an opportunity to review the requested accommodation to ensure that China was a necessity, rather than a desire.

This matter is analogous to and governed by the Eleventh Circuit's decision in *Hawn v. Shoreline Towers Phase 1 Condominium Association, Inc.*, 347 F. App'x 464 (11th Cir. 2009). In *Hawn*, the plaintiff informed his condominium association that he had acquired a pet, and the association's policy against pets impaired his enjoyment of his home. *Id.* at 465.  When the association did not respond favorably or otherwise, the plaintiff sent another letter stating that he suffered from a physical and psychiatric disability necessitating his service animal.  Attached to his correspondence were letters from his chiropractor and psychologist asserting that a service animal was medically necessary. *Id.* at 466.  The association requested additional information to consider the request, including documentation supporting plaintiff's disabilities and the qualifications of the physicians.  Plaintiff did not respond to the request, which resulted in the association's denial of the accommodation. *Id.*  Upholding the district court's grant of summary judgment to the condominium association, the Eleventh Circuit concluded that plaintiff's "letter included unclear explanations as to the nature and extent of his disability," and his "refusal to comply with subsequent requests for reasonable documentation prevented Shoreline from conducting a meaningful review of Hawn's application."

Similarly, Mr. Robin's initial documentation from his provider does not detail Plaintiff's disability, the level of any impairment, or any manner in which China, as opposed to some other mechanism or animal, would alleviate or lessen the disability. Further, Mr. Robins' happenchance discovery of China and initial maintenance of her as a pet belies later claims of necessity of China as a service animal only when the Association cautioned Mr. Robins about his violation of the pet police. *See Hawn*, 347 F. App'x at 468 (holding plaintiff's letter of disability to be inconsistent with primary reasons provided for wanting a pet).

Because I have determined that Plaintiff has not established the first element of the prima facie case of discrimination under 42 U.S.C. § 3604(f), I will not consider Defendant's remaining arguments regarding the necessity and reasonableness of Plaintiff's requested accommodation.

**B.     42 U.S.C. § 3617 Claim**

In addition to a prohibition on discrimination, the FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected [under this] title." 42 U.S.C. § 3617. In order to state a claim under 42 U.S.C. § 3617, a plaintiff must demonstrate the following: "(1) the [] individual[] [is a] member[] of a protected class under the Fair Housing Act; (2) the individual[] on whose behalf this suit is brought exercised or enjoyed a right protected by §§ 3603–3606, or aided or encouraged others in exercising or enjoying such rights; (3) the Defendant'[s] conduct was at least in part intentional discrimination; and (4) the Defendant'[s] conduct constituted coercion, intimidation, threat, or interference on account of having exercised, or aided or encouraged others in exercising, a right protected under §§ 3603–3606." *U.S. v. Sea Winds of Marco, Inc.*, 893 F. Supp. 1051,1055 (M.D. Fla. 1995).

For the reasons provided *supra*, Mr. Robins has not carried his burden of demonstrating that he is a member of a protected class under the FHA. Thus, his claim under 42 U.S.C. § 3617 is not sustainable. Further, however, Plaintiff fails to demonstrate that Defendant's conduct amounted to "coercion, intimidation, threat, or interference."

While the Association's board members, directors, and associates' conduct, as described by Plaintiff, is reprehensible, it does not rise to the level of coercion, intimidation, threats, or interference necessary under 42 U.S.C. § 3617. *See, e.g., Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 722 (11th Cir.1991) (finding that a note threatening "to break [the plaintiff] in half," hitting his truck, shouting obscenities and spitting at him constituted coercion and intimidation under § 3617 when there was also an indication that there was a discriminatory motivation behind that conduct); *Sea Winds of Marco, Inc.*, 893 F. Supp. 1051 (stating a claim where the corporate defendant instituted a policy requiring identification wristbands to be worn but the policy was only enforced against Hispanic tenants and Hispanic tenants were selectively monitored and derogatory remarks made against them); *Johnson v. Smith*, 810 F. Supp. 235, 238–39 (N.D. Ill. 1992) (denying motion to dismiss based upon allegations that the defendants burned a cross on the plaintiff's property); *People Helpers Foundation v. City of Richmond*, 781 F .Supp. 1132, 1133 (E.D. Va. 1992) (finding retaliation claim under circumstances where neighbors made derogatory comments, gathered other neighbors together in a threatening manner and complained to the police that they did not want these "types" from living in the building, the plaintiff adequately pled a retaliation claim under FHA).

Contrastingly, Plaintiff presents no evidence that he was threatened with harm, eviction, or anything of the like. The only "threat" Plaintiff alludes to is the banning of China from the premises where the Association had evidence of China's violence against other unit owner's

pets. Mr. Robins' enjoyment of his home cannot supersede the safety and enjoyment of others in their homes.

## CONCLUSION

Having reviewed the arguments and the record, I find that Plaintiff fails to establish a *prima facie* case of his claims. Plaintiff does not adequately demonstrate that he is disabled or handicapped within the meaning of the FHA sufficient to survive summary judgment of his FHA reasonable accommodation and intimidation claims. Nor does he demonstrate that Defendant's conduct constituted coercion, intimidation, threats, or interference necessary to state a 42 U.S.C. § 3617 violation claim. Accordingly, summary judgment in favor of the Defendant is appropriate.

It is, therefore, **ORDERED and ADJUDGED** that:

1. Defendant The Towers of Quayside No. 1 Condominium Association, Inc.'s Motion for Summary Judgment (ECF No. 36) is **GRANTED.**
2. The Plaintiff's Complaint is **DISMISSED**.
3. The Clerk is directed to **CLOSE** this case.
4. All pending motions, if any, are **DENIED** *as moot*.

**DONE AND ORDERED** in chambers at Miami, Florida, this 28th day of November 2012.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*